**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JOSUE M. MOYA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-0181** |
| **KENNER POLICE DEPT., ET AL.** | **SECTION "P"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). On April 7, 2025, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone.[2]  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## I.    Background

### A.    Complaint (ECF No. 3)

Plaintiff Josue M. Moya ("Moya"), is a pretrial detainee housed in the Jefferson Parish Correctional Center.  ECF No. 3, ¶II, at 2.  Moya filed this *pro se* and *in forma pauperis* suit pursuant to 42 U.S.C. § 1983 against defendants Kenner Police Department ("KPD"), Officer Jonathon Dunn, Officer Simon Dowd, Officer Jordan Bloomer, and two other unidentified Kenner Police Department officers.  *Id*., ¶III(B)-(F), at 4.

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims.  The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. Proc. 12(e).  *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] ECF No. 7.  Plaintiff was sworn before testifying and the hearing was electronically recorded.

Under a broad reading of his complaint, Moya alleges that during his arrest on April 30, 2024, he was pulled over by KPD for a hit and run accident. ECF No. 4, ¶III(A), at 3; *id*., IV, at 4; *id*. at 9. Moya claims he was handcuffed, placed in another police unit, and escorted to jail. At the jail, he was asked to submit to a breathalyzer test by Lt. Hales. Upon asking to see the maintenance report on the breathalyzer machine, which he was denied, he refused the test. Lt. Hales informed Moya he would obtain a warrant for the chemical test. Moya claims when paramedics arrived, he asked to see the warrant. Lt. Hales purportedly waived it in his hand but refused to show it to him. Moya states more officers were called for assistance and grabbed him, throwing him to the floor. He alleges when he was thrown to the ground by officers he hit his head on the concrete floor. Moya states his forehead was busted open and began bleeding profusely. Next, he was strapped to a chair and his blood was taken without his consent. After his blood was taken, Moya claims he was transported to University Medical Center, New Orleans, for his injuries.

As relief, Moya seeks monetary damages for deprivation of his constitutional rights, pain and suffering, mental anguish, sleep deprivation, loss of wages, and emotional distress. *Id*., ¶V, at 5.

**B.** *Spears* **Hearing**

During the *Spears* hearing, Moya testified he was driving to work on I-10 around 11 p.m. the night of his arrest when he encountered KPD blocking the road. He stated due to not having his glasses on, and it being nighttime, he swiped the front bumper of a KPD police car with his vehicle. Moya claims he kept driving but stopped at the end of the road and exited his vehicle. Officers told Moya to get on the ground, but he informed them he could not due to having bad knees. Moya testified he then placed his hands behind his back so they could handcuff him and take him into custody.

After being handcuffed and taken to the station, Moya was asked to submit to a breathalyzer which he refused when he was denied seeing the maintenance records on the machine. Moya testified that after his denial to submit to the test he was placed in a holding cell. Later, Moya stated he was asked again to submit to a breathalyzer which he refused. Upon his refusal, he was informed officers would get a warrant. Moya testified upon their return with the purported warrant, he asked the officer to see it. He stated the officer then waived the paper in the air and informed Moya it was not for him to see. Moya testified he refused to submit to the blood draw and proceeded to close his arms and walked against the wall in the holding cell. He stated several other officers arrived and forced him down onto the ground. Moya claimed when he was thrown onto the ground his forehead was the first thing to hit the floor, causing it to bust open and bleed. He testified he was then forcibly tied to a chair and his blood was taken. Moya testified on the date of his arrest he consumed several beers at lunch and at dinner. He stated he is an alcoholic and the results of his BAC after his blood was drawn were a 0.12. Moya testified because of the events he was charged with resisting arrest, driving without insurance, and having a fake car registration. He stated all charges are currently still pending and that his next court appearance is set for July 2025.

As a result of his injuries, Moya testified he was taken to University Medical Center where his shoulder and knee were x-rayed. He was also given shots and band aids for his bloody forehead along with pain medication. Moya stated he has continued to take pain medication for his shoulder and knee. When prompted as to why he named Officers Dunn, Dowd, and Bloomer as defendants, Moya stated he knew each of them were involved in his arrest and subsequent events.

## II.     Standards of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a

determination that they are frivolous.  The Court has broad discretion in determining the frivolous

nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other*

*grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte*

dismiss an action merely because of questionable legal theories or unlikely factual allegations in

the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact.

*Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir.

1998).  "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal

theory, such as if the complaint alleges the violation of a legal interest which clearly does not

exist."  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d

882, 889 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly

baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v.*

*Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28).  Thus, the Court must

determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly

baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v.*

*Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.    Analysis**

**A.    Improper Defendant**

Moya named KPD as a defendant in the caption of his complaint.  ECF No. 3, at 1. In

Louisiana, "a parish sheriff's office is not a legal entity capable of being sued in a federal civil

rights action." *Francis v. Terrebonne Parish Sheriff's Office*, No. 08-4972, 2009 WL 4730707, at

*2 (E.D. La. Dec. 9, 2009) (citing *Cozzo v. Tangipahoa Parish Council-President Government*,

279 F.3d 273, 283 (5th Cir. 2002)); *Martin v. Davis*, No. 06-1770, 2007 WL 763653, at *2 (E.D.

4

La. Mar. 8, 2007) (citing LA. REV. STAT. ANN. § 33:361 and *Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898, 909 (E.D. La. Apr. 12, 2001)). The same is true of a city police department, which "is merely a department . . . and not a proper party defendant" in a § 1983 action. *Causey*, 167 F. Supp. 2d at 909 (citing *Norwood v. City of Hammond*, No. 99-879, 1999 WL 777713, at *2 (E.D. La. Sep. 30, 1999)). The State of Louisiana grants no such legal status to any law enforcement office or department. *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So. 2d 236, 238-39 (La. App. 3d Cir. 1977).

Similarly, under federal law, Louisiana's sheriff's offices and city police departments are not considered to be "persons" for purposes of § 1983 liability. *Calhoun v. Sanderson*, No. 01-3765, 2003 WL 1595088, *5 (E.D. La. Mar. 25, 2003) (sheriff's office); *Creppel v. Miller*, No. 92-2531, 1993 WL 21408, *1 (E.D. La. Jan. 22, 1993) (city police department office); *Causey*, 167 F. Supp. 2d at 909 (city police department); *Melancon v. New Orleans Police Dept.*, No. 08-5005, 2009 WL 249741, at *2 (E.D. La. Jan. 30, 2009) (Order adopting Report and Recommendation) (citing *Montoya v. Taylor*, 44 F.3d 1005 n.1 (5th Cir. 1995)) (city police department).

Given that the KPD is not a person or suable entity to be held liable under § 1983, Moya's claims against KPD must be dismissed pursuant to 28 U.S.C. § 1915(e), § 1915A as frivolous and for failure to state a claim upon which relief can be granted.

B.    **Claims Against KPD Officers**

Moya asserts claims of false arrest and excessive force against Officers Dunn, Down, Bloomer, and two unidentified KPD officers arising from his arrest on April 30, 2024. Moya essentially challenges the alleged false search warrant by these Officers which he states did not provide them with authority to draw his blood after he refused to submit to a breathalyzer.

5

Additionally, he claims officers used excessive force by slamming him onto the ground headfirst when restraining him to draw his blood after he refused.

Moya does not indicate in his complaint the capacity in which he has named any of the defendants. When this happens, to determine whether a defendant has been sued in his official or individual capacity, the court must look to the complaint and the course of the proceedings to determine in which capacity the defendant is sued. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically indicate the nature of the liability sought to be imposed.") (citations omitted); *Garrett v. Stephens*, 675 F. App'x 444, 447 (5th Cir. 2017) (where complaint did not specifically state whether plaintiff was suing defendants in their individual or official capacities, the Court "assume[d] he was pursuing both avenues."); *Hopkins v. Gusman*, No. 06-5022, 2007 WL 2407247, at *4 (E.D. La. Aug. 17, 2007) ("In the Fifth Circuit, 'the allegations in the complaint must be examined in order to determine the nature of the plaintiff's cause of action.'" (quoting *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir.1973)); *Forside v. Miss. State Univ.*, No. 01-438, 2002 WL 31992181, at *5 n.2 (N.D. Miss. 2002) ("While some circuits require rigid pleading requirements to specify individual or official capacity in section 1983 suits, . . . the Fifth Circuit looks to the substance of the claim, the relief sought, and the course of proceedings.").[3]

---

[3] Citing other Circuits, one division of this Court has adopted the more rigid rule that "[w]hen a *pro se* plaintiff does not specify in his complaint whether a defendant is named in his or her official or individual capacity, it is generally presumed by operation of law that the defendant is named in his or her official capacity." *Douglas v. Gusman*, 567 F. Supp. 2d 877, 888-89 (E.D. La. 2008) (Order adopting R&R) (citing *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999); *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989)).

Reviewing Moya's complaint, he seeks monetary relief against the defendants.    The

monetary relief sought is for deprivation of his constitutional rights, pain and suffering, mental

anguish, sleep deprivation, loss of wages, and emotional distress. *Id*., ¶V, at 5.    Broadly construing

these terms and the request for monetary compensation, it appears to the Court that Moya intends

to sue the Officers individually for violating his constitutional rights through their intentional use

of excessive force and alleged fabrication of a search warrant. However, Moya's claims appear to

be inextricably intertwined with his criminal pretrial detention and are barred by the United States

Supreme Court's doctrine under *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that a claim that, in effect, attacks the constitutionality of

a conviction or imprisonment is not cognizable under § 1983 and does not accrue until that

conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared

invalid by a state tribunal authorized to make such determination, or called into question by a

federal court's issuance of a writ of habeas corpus."  *Id*. at 486-87.   The *Heck* doctrine applies

whether a plaintiff seeks monetary or injunctive relief.  *Wilkinson v. Dotson*, 544 U.S. 74, 81-82

(2005) (under *Heck*, "a state prisoner's section 1983 action is barred (absent prior invalidation) -

no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit

(state conduct leading to conviction or internal prison proceedings) - if success in that action would

necessarily demonstrate the invalidity of confinement or its duration"); *Clarke v. Stalder*, 154 F.3d

186, 189 (5th Cir. 1998) (citing *Edwards v. Balisok*, 520 U.S. 641 (1997)).

The Supreme Court applied a modified version of *Heck* to pretrial detainees in *Wallace v.*

*Kato*, 549 U.S. 384, 393-94 (2007).   In *Wallace*, the Court explained that, if a pretrial detainee

files civil rights claims related to the validity of a pending criminal proceeding, the best practice

is for the district court to stay the civil rights action until the pending criminal case is resolved to

determine the impact of the *Heck* limitations.  *Id.*, 549 U.S. at 393-94; *see Mackey v. Dickson*, 47

F. 3d 744, 746 (5th Cir. 1995) (finding stay of pretrial § 1983 challenges to be the best practice).

The court in *Wallace* explained:

> If a plaintiff files a false arrest claim before he has been convicted (or files any
> other claim related to rulings that will likely be made in a pending or anticipated
> criminal trial), it is within the power of the district court, and in accord with
> common practice, to stay the civil action until the criminal case or the likelihood of
> a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed
> civil suit would impugn that conviction, Heck will require dismissal; otherwise, the
> civil action will proceed, absent some other bar to suit.

*Wallace*, 549 U.S. at 393-94 (citations omitted).

Moya's claims of false arrest via a fabricated search warrant necessarily call into question

the validity of the charges against him and his current incarceration.  *See Goldstein v. City of*

*Monroe*, 621 F. App'x 274, 278 (5th Cir. 2015) (concluding that claim that arrest warrant lacked

probable cause is in essence a collateral attack on the conviction).  A favorable finding on his

claims would call into question the legality of the ongoing state criminal proceedings and his

pretrial confinement.

As for Moya's claims of excessive force, the determination of whether the *Heck* bar applies

to a § 1983 excessive force claim, "is analytical and fact-intensive, requiring [a court] to focus on

whether success on the excessive force claim requires negation of an element of the criminal

offense or proof of a fact that is inherently inconsistent with one underlying the criminal

conviction."  *Bush v. Strain*, 513 F.3d 492, 497 (5th. Cir. 2008) (footnote omitted). When the

excessive force claim arises from "'a single violent encounter' in which the plaintiff insists he was

an innocent party," *Heck* would apply to bar the claim.  *Lee v. Ard*, 785 F. App'x 247, 248 (5th

Cir. 2019) (quoting *Bush*, 513 F.3d at 498 and citing *DeLeon v. City of Corpus Christi*, 488 F.3d

649, 656-57 (5th. Cir. 2007)). In evaluating the use of force, the Court may analyze whether the

use of force was distinct from the events leading to the criminal conviction or part of a series of ongoing events. *Hall v. Abilene's Task Force*, 681 F. App'x 422, 423 (5th Cir. 2017) (finding *Heck* barred excessive force claims because plaintiff did not assert that the officers' use of force was "temporally or conceptually distinct" from his criminal conviction and instead arose from "a continuous series of events" (citing *DeLeon*, 488 F.3d at 656-57)).

In the instant case, Moya has a pending charge for resisting arrest. Moya initially resisted officers by refusing to get on his knees at the time he was handcuffed. At the time of the alleged use force, Moya resisted officers when they came to draw his blood by closing his arms and walking to the back of the cell wall. Further, Moya continued to resist after being restrained by officers when he was forcibly tied into a chair to have his blood drawn. Therefore, it would not appear the officers' use of force was "temporally or conceptually distinct" from his criminal charge. *DeLeon*, 488 F.3d at 656-57. Given that the alleged use of force and subsequent injuries occurred during an ongoing series of events in conjunction with the resisting, a stay is proper under *Wallace* until such time as the applicability of *Heck* can be properly addressed after disposition of the relevant, pending charges of resisting a police officer. *See Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004).

Thus, Moya's claims against Officers Dunn, Dowd, Bloomer, and two unidentified KPD officers for excessive force and false arrest, all tied to his arrest and indictment, fall under the *Heck* bar. As a pretrial detainee, under *Wallace*, Moya's claims cannot proceed and will have to be stayed. If he is or has since been convicted, he will have to establish that a state or federal court has determined the terms of his confinement to be invalid or criticized in one of the ways discussed in *Heck* for this Court to consider his fabricated search warrant claim. At this time, he cannot

pursue a claim related to false arrest or excessive force against the Officers, and a stay is recommended.

### RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff Josue M. Moya's 42 U.S.C. § 1983 claims against defendant Kenner Police Department be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e) and § 1915A, as frivolous and otherwise for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that, pursuant to *Wallace v. Kato*, 549 U.S. 384 (2007), Moya's § 1983 claims for excessive force and false arrest on April 30, 2024, against defendants Officer Jonathon Dunn, Officer Simon Dowd, Officer Jordan Bloomer, and two other unidentified Kenner Police Department officers be **STAYED**. The Clerk of Court should be directed to statistically close the stayed portion of the case for administrative purposes. Further, the Court should order that, within 60 days of finality of Moya's conviction or upon disposition of the state criminal charges in his favor, either party may move to reopen the matter for further proceedings consistent with *Heck v. Humphrey*, 512 U.S. 477 (1994).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.

1996).[4]

New Orleans, Louisiana, this ___12th___ day of June, 2025.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.